CLINTON THOMAS, ADMINISTRATOR OF THE ESTATE OF TERRY EUGENE THOMAS, DECEASED v. DORA REVELS MORGAN.

(Filed 12 June 1964.)

**1. Automobiles § 41p—**

Testimony to the effect that immediately before the accident a witness sitting on a bench in front of a store saw a large man wearing a tee shirt as the passenger on the front seat, together with evidence that plaintiff's intestate was a large man wearing a tee shirt and that only intestate and defendant's husband were on the front seat, *is held* sufficient to be submitted to the jury as to whether defendant's husband was the driver of the car at the time of the collision, notwithstanding the testimony on cross-examination of a back seat passenger that intestate was the driver.

**2. Trial § 18—**

It is the province of the court to determine whether the evidence, circumstantial, direct, or a combination of both, considered in the light most favorable to plaintiff, is sufficient to permit a legitimate inference of the facts essential to recovery, and it is the province of the jury to weigh the evidence and determine what it proves or fails to prove.

**3. Trial § 22—**

Since the evidence must be considered in the light most favorable to plaintiff on motion to nonsuit, discrepancies and contradictions in plaintiff's evidence are for the jury to resolve and do not justify nonsuit.

APPEAL by defendant from *McKinnon, J.,* November, 1963 Civil Session, ROBESON Superior Court.

The plaintiff, Administrator of Terry· Eugene Thomas, instituted this civil action against the defendant for the recovery of wrongful death benefits allegedly caused by the actionable negligence of Carlee Morgan, the defendant's husband. The pleadings raise these issues which the judge submitted and the jury answered as herein indicated:

"(1)  Was the death of plaintiff's intestate caused by the negligence of Carlee Morgan, as alleged in the complaint?

Answer:  Yes.

"(2)  Was Carlee Morgan at the time in question operating the automobile of the defendant, Dora Revels Morgan, as her agent within the scope of the family purpose doctrine?

Answer:  Yes.

"(3)  What amount, if any, is plaintiff entitled to recover?

Answer:  $10,000.00."

From the judgment in accordance with the verdict, the defendant appealed.

*Hackett & Weinstein by F. D. Hackett for plaintiff appellee.*
*Johnson, Biggs & Britt by I. M. Biggs for defendant appellant.*

HIGGINS, J.  The defendant, by answer, admitted she was the registered owner of the 1957 Chevrolet two-door sedan in which the plaintiff's intestate was riding at the time he was fatally injured. The evidence is plenary that the driver's negligence proximately caused the accident. The defendant, by answer, denied her husband, Carlee Morgan, was the driver or had her permission to drive the vehicle. She alleged the plaintiff's intestate was the driver and his own negligence was solely responsible for his death. However, she alleged conditionally, that if it be found her husband, or some other person for whose negligence she is responsible, should be found to have been the driver, which she denies, then the plaintiff's intestate was guilty of contributory negligence in that he voluntarily continued to ride in the vehicle which was being operated negligently and in violation of law; and that recovery should be denied for that reason.

While the defendant assigns as error the court's failure to sustain her objection to a leading question and to certain parts of the judge's charge, her main contention is that the court committed error in overruling her motion for nonsuit upon the ground the evidence was insufficient to show her husband, Carlee Morgan, was driving her vehicle at the time of the accident. The evidence as to driver identity admittedly is conflicting.

The evidence disclosed that the defendant and her husband lived one mile from the Thomas home where the intestate, age 22, lived with his parents. On Sunday morning, May 26, 1963, Carlee Morgan drove the Chevrolet to the Thomas home. He was alone. About eleven o'clock he and plaintiff's intestate left in the Chevrolet. Carlee Morgan was driving. What happened to them until just after seven o'clock is undisclosed.

A few minutes after seven o'clock, while sitting on a bench in front of his mother's store, Lincoln Cade saw the Chevrolet approaching

from the south at a speed of more than 60 miles per hour. The store was on the East side of the road. Four persons were in the vehicle — two in the back seat and two in front. As the vehicle passed, the witness had a good view of the man sitting on the outside of the front seat. He was a large man in a white tee shirt. We quote his picturesque description of what happened: "As the car went down the highway, I heard a noise that attracted my attention on down the road. I just heard some wheels squealing and a big boom collision." He immediately went to the scene of the accident. Two boys were walking up and down the road. One was lying half under the car, the one with the white shirt, "the biggest boy." "The only thing I can say about what I saw was a big man seated in the right front seat. As to how I know it was the same man under the car, he had on a white T-shirt. As to whether anybody else in the car was dressed like that, I didn't see anyone. . . . It was the same big fellow . . . He was dead."

J. C. Davis, Highway Patrolman, arrived at the scene of the accident at 7:30. The Chevrolet was 20 to 25 feet off the highway, out of sight, in the bushes. "I saw Carlee Morgan and John Edmond Carter near the highway; . . . I found the other brother, James Melvin Carter, down in some water, . . . the automobile was laying on its left side, the driver's side . . . The car had all the windows broken except the left front driver's door window . . . The total skid marks from where they started to where the car finished was some 560 feet . . . there were three pine trees nine inches in diameter broken completely in half . . . The door on the left or driver's side was jammed. The door on the right side was sprung open."

John Edmond Carter testified that he and James Melvin Carter were riding in the back seat. Terry Eugene Thomas was thrown out of the car. On cross-examination, he testified that Terry Thomas was driving the car. "He started driving the automobile at the Old Foundry. That was fifteen to twenty or thirty minutes before the accident."

The evidence is undisputed that four persons were in the Chevrolet at the time of the accident. The Carter boys were in the back seat. The evidence is undisputed that two men were in the front seat. One of them was the plaintiff's intestate who weighed 220 pounds and was wearing a white tee shirt. The defendant's husband, Carlee Morgan, was there at the scene. The evidence, if true, clearly indicates that the two men in the front seat were the defendant's husband and the plaintiff's intestate. Lincoln Cade's testimony fixes the large boy in the white tee shirt as the passenger he saw in the front seat. If so, the defendant's husband must have been the driver, or at least such is the permissible, if not compelling, inference. On the other hand, on cross-

examination, a plaintiff's witness testified that plaintiff's intestate was the driver. The evidence, therefore, raises an issue of fact.

The respective duties of the court and jury in cases of this character are clearly marked. The court must determine whether the evidence, in its light most favorable to the plaintiff, permits a reasonable inference that Carlee Morgan was driving the Chevrolet at the time of the accident. Evidence sufficient to make out a case may be circumstantial, or it may be direct, or it may be a combination of both. *Pridgen v. Uzzell,* 254 N.C. 292, 118 S.E. 2d 755. In passing on the sufficiency of the evidence, "Discrepancies and contradictions, even in plaintiff's evidence, are for the twelve and not for the court." *Bridges v. Graham,* 246 N.C. 371, 98 S.E. 2d 492; *Keaton v. Taxi Co.,* 241 N.C. 589, 86 S.E. 2d 93; *Barlow v. Bus Lines,* 229 N.C. 382, 49 S.E. 2d 793. The court must determine as a matter of law whether the evidence is sufficient to permit a legitimate inference of the facts necessary to be proved. But a jury must weigh the evidence and determine what it proves or fails to prove. Tested by these rules, we hold the evidence was sufficient to survive the motion for nonsuit. In the trial and judgment, we find

No error.